UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:11-CV-417-KSF

BRENDA B. HUFFER                                                           PLAINTIFF

vs.                          **OPINION AND ORDER**

UNIVERSITY OF KENTUCKY, et al.                              DEFENDANTS

\* \* \* \* \* \* \* \*

This matter is before the Court on the Defendants' motion for summary judgment. Pro se Plaintiff Brenda Huffer ("Huffer") primarily claims she was discriminated against by her former employer, the University of Kentucky ("UK"), and some of its employees in violation of the Americans with Disabilities Act ("ADA") and the Family Medical Leave Act ("FMLA"). She also alleges state law violations. DE 1. For the reasons discussed below, Defendants' motion will be granted.

I.     BACKGROUND

Huffer began working for UK in 2003 and soon thereafter was promoted to Senior parking officer. Huffer Dep. at 23-25. On September 22, 2010, Huffer's regularly assigned vehicle was in the shop for repair, and she was assigned to drive another vehicle which she claims had a seat that "wobbled." *Id.* at 38, 40. Huffer walked her assigned parking lots that day, but was asked later in the day to drive to make a bank deposit and some other trips that she could not recall. *Id.* at 42-44. The temporary vehicle was taken out of service on October 5 for repairs. *Id.* at 44-45. Huffer complained to her supervisor, Defendant Glenna Baker ("Baker"), that the vehicle was "dangerous" or "unsafe," but she did not tell Baker that operating it was causing her any physical difficulties. *Id.* at 53; DE 1 at 5, ¶ 3.

On October 4, 2010, Huffer applied for intermittent FMLA leave from September 29 through November 29 as a result of a condition that she said began March 24, 2009. DE 31-5. The doctor's statement on the application recommends no lifting of more than fifteen pounds, no repetitive pushing or pulling and no climbing. *Id.* at 2. When advised of these restrictions, Baker told Huffer to work in a cash booth for the day. Huffer Dep. at 57-58. Huffer claimed she could not do that because it would require lifting her arm to almost shoulder level. Baker advised she needed a statement from Huffer's doctor that she could not do that work. *Id.* at 57-59.

That same day, Huffer contacted Defendant Sherri Murphy-Goins in UK employee relations complaining that Huffer was "bullied" by her supervisors when she complained about having to drive an unsafe vehicle. *Id.* at 172; DE 31-6 (email exchange). Murphy-Goins suggested Huffer contact Risk Management regarding her equipment safety concerns and to report to Worker's Care if she felt she had a work-related injury. DE 31-6.

Huffer visited her doctor and submitted an October 6, 2010 letter from him stating that she had "acute cervical neck strain associated with upper extremity dysesthesias" for which he began treatment on September 29. "Activities which aggravate cervical strain associated with nerve impingement include repetitive cervical flexion and upper body twisting." DE 31-7. The doctor said that driving and ticket assignment "appear to avoid excessive flexion and extension and would be appropriate to maintain." *Id.* Huffer gave the letter to Defendant Michael Marise ("Marise"), who was her senior manager within Med Center Operations. DE 1 at 3, ¶ 2. He instructed her to walk her sector, which she did. Huffer Dep. at 66. Huffer emailed Murphy-Goins on October 6 complaining that being assigned light duty in the cash booth was a way of punishing her. DE 31-8.

On October 8, Marise listed Huffer's job duties and asked her to have her doctor clarify how her medical restrictions would impact these job duties. DE 31-9. The doctor advised that she could not perform auto assists or immobilize vehicles for towing. *Id.* Huffer complained to Murphy-Goins

2

that the request was "ridiculous" and that she was being harassed. DE 31-10. She suggested that other employees could assist or handle duties that exceeded her restrictions. *Id.* Murphy-Goins responded that she recommended the clarification and that if Huffer had a complaint of harassment or hostile work environment, she should contact UK's Office of Institutional Equity and Equal Opportunity. DE 31-11. On October 14, Murphy-Goins emailed Huffer that a review of the situation did not support the allegation of "workplace bullying." In response to Huffer's request to transfer to another job, Murphy-Goins said she should apply for any open and posted position following the process for internal transfer. If she wished to make a formal allegation of retaliation, sexual harassment, harassment or hostile work environment, she should contact the Office of Institutional Equity and Equal Opportunity. DE 31-12. On October 14, Marise advised Huffer that her work activities would be temporarily adjusted until November 1 to meet her current restrictions. DE 31-13.

On October 29, Huffer applied for FMLA leave from November 3 until December 15 and included a note stating that she was scheduled for an anterior cervical diskectomy and fusion at C-4, C5-6 on November 3. DE 31-14. On November 1, Huffer filed an OSHA complaint that she was harassed and threatened by her supervisor after she complained about the safety of a vehicle. DE 31-15. On November 10, Huffer filed a Charge of Discrimination with the EEOC alleging that she was being denied an accommodation under the ADA and was suffering retaliation for requesting an accommodation. DE 31-16. Huffer came to work on December 15 but was still under restrictions. Marise sent her home and advised they needed to understand whether her restrictions were temporary or permanent and their duration if temporary. Huffer was asked to provide that information by January 3, 2011 and told she would remain on FMLA leave until then. DE 31-17. On December 27, Huffer's neurosurgeon advised that she could not lift over ten pounds and should avoid working with her arms above her shoulder, but she "may resume full duty pending follow-up appt. with Dr. Tutt in early Feb. 2011." DE 31-18. On January 4, Huffer emailed Marise

3

and said she is not currently able to lift or carry anything over ten pounds. She said she would turn in her equipment and keys as soon as she was physically able to do so. DE 31-19.

Defendant Patricia Bender ("Bender"), identified by Plaintiff as "Assistant Vice President for Equal Opportunity for the University," emailed Huffer on January 11, 2011 that the doctor said she could return to work in early February, but if she still had ADA concerns, she was provided a form to request a reasonable accommodation. DE 31-20. Marise also wrote Huffer that her twelve weeks of FMLA leave would expire on February 1 and that, if she could not return to work then, she needed to provide additional medical documentation from her physician. DE 31-21. Huffer testified that she had been constructively discharged by that time. DE 31-3 at 115. After receiving no response from Huffer, Marise wrote her on February 11 that the department had placed her on "approved unpaid Special leave until Feb. 28, 2011" to give her time to submit documentation regarding her need to remain off work and a targeted return date. She was also advised to contact UK's EEO office to discuss ADA accommodations if she felt she could not perform the essential functions of her job. DE 31-22.

When Huffer did not respond to the February 11 letter nor return to work in February, UK completed an Employee Separation sheet saying Huffer voluntarily quit when she did not return to work from leave. DE 31-23. Huffer was paid through April 2011. Huffer Dep. 115.

Huffer's complaint to the Kentucky Labor Cabinet was denied after it investigated and concluded that she was not constructively discharged and there was no evidence of threats to terminate her employment. DE 31-24. The dismissal of her OSHA complaint was affirmed. DE 31-25. Huffer's EEOC complaint was also dismissed. DE 31-26. Huffer was denied unemployment benefits, and the decision was affirmed on appeal. DE 31-30, 31-31.

## II.     ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343.

### A. Sovereign Immunity

In 2001, the United States Supreme Court held that "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational." *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 368 (2001). *See also Robinson v. University of Akron School of Law*, 307 F.3d 409, 411 (6th Cir. 2002) (same). Similarly, in *Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327 (2012), the court held that "suits against States under this [self-care] provision are barred by the States' immunity as sovereigns in our federal system." *Id.* at 1332. The "University of Kentucky is entitled to sovereign immunity" as a state agency. *Withers v. University of Kentucky,* 939 S.W.2d 340, 343 (Ky. 1997). Accordingly, Plaintiff's claims for money damages under the ADA and FMLA must be dismissed since they are barred by sovereign immunity.[1]

Plaintiff's reply suggests that *Garrett* was reversed by the Third Circuit on remand. DE 33-1 at ¶ 2. *See Garrett v. University of Alabama at Birmingham Board of Trustees*, 344 F.3d 1288 (11th Cir. 2003). Obviously, a lower court cannot reverse a higher court. The 2003 decision by the

---

[1] UK briefed the ADA and FMLA claims on the merits and demonstrated that Huffer could not prevail. It is not necessary to repeat the merits discussion, however, when the claims are barred.

5

Eleventh Circuit dealt with waiver of sovereign immunity under the Rehabilitation Act. Huffer has not made any claim under the Rehabilitation Act. Additionally, Huffer's attempt to limit the holding of *Coleman* to a gender-based claim is without merit. Petitioner Coleman was a male and made no gender-based claims at all. *Coleman*, 132 S. Ct. at 1332-3.

### B. Claims Against Marise, Baker, Murphy-Goins and Bender

In the Introduction to her Complaint, Huffer states she "brings this action against defendants cited above, together and in their singular official capacities." "An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). All factual allegations in the complaint relate to actions taken by these named persons in their official capacities as employees of UK. Accordingly, these persons should be dismissed as individual Defendants.

### C. Retaliation Claim

This Court does not have jurisdiction over Huffer's claim of retaliation for reporting OSHA violations pursuant to KRS 338.121. Huffer's claim was presented to the Department of Labor and denied. The denial was affirmed on appeal. DE 31-24, 31-25. Huffer did not seek judicial review in the Franklin Circuit Court within thirty days of the final May 3, 2011 decision as required by KRS 338.091. Accordingly, the decision is final and not subject to review.

### D. Unemployment Insurance Claim

Huffer argues this Court has jurisdiction over her unemployment insurance claim because she says the Defendants committed fraud during the unemployment proceeding. DE 33 at 2. Huffer's unemployment claim was denied pursuant to a Referee Decision dated January 27, 2012. The Referee found that Huffer "voluntarily left the employer without good cause attributable to the employment." DE 31-30. On March 29, 2012, the Unemployment Insurance Commission affirmed the decision. DE 31-31. Huffer had twenty days to appeal to the appropriate state Circuit Court

6

under KRS 341.450(1), but she did not do so. Accordingly, this decision is final and not subject to further review in this Court.

### III. CONCLUSION

**IT IS ORDERED** as follows:

1. Defendants' motion for summary judgment [DE 31] is **GRANTED** and Judgment will be entered contemporaneously with this Opinion and Order.

2. The pretrial conference and trial scheduled for February 28, 2013 and April 2, 2013, respectively, are **SET ASIDE**.

This February 1, 2013.

Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**